**McDERMOTT WILL & EMERY LLP**
DANIEL R. FOSTER (Bar No. 179753)
dfoster@mwe.com
ERIC R. GARCIA (Bar No. 261101)
ergarcia@mwe.com
4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
Telephone: +1 949 851 0633
Facsimile: +1 949 851 9348

Attorneys for Plaintiff
ZODIAC POOL SYSTEMS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZODIAC POOL SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AQUASTAR POOL PRODUCTS, INC., a California corporation,<br><br>Defendant. | CASE NO.: 13CV0343-GPS-WMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND .............................................................................2

    A. Zodiac's Business and Trademark .............................................................2

    B. AquaStar's Business and the StealthStar Pool Cleaner ............................3

III. ARGUMENT .......................................................................................................3

    A. There is A Substantial Likelihood That Zodiac Will Succeed On Each of Its Claims ................................................................................4

        1. There is A Substantial Likelihood That Zodiac Will Succeed On Its Trade Dress Infringement Claims and Unfair Competition Claims .........................................................4

            a. Zodiac's Product Configuration is not Functional ...........5

                (1) Zodiac's trade dress does not yield a utilitarian advantage ...............................................5

                (2) There are many alternative designs for pool cleaners..................................................................6

                (3) Zodiac's Polaris Pool Cleaners are not less expensive to manufacture or use.............................6

            b. Zodiac's trade dress is distinctive .....................................7

                (1) Zodiac's Polaris pool cleaners are inherently distinctive .............................................................7

                (2) Zodiac's Polaris pool cleaners and trade dress have acquired Distinctiveness (secondary meaning)................................................7

                      (a) Long term exclusive use ..............................7

                      (b) Extensive advertising demonstrates secondary meaning ......................................8

                      (c) AquaStar's copying implies secondary meaning........................................................8

            c. AquaStar's Use Of Zodiac's Trade Dress Is Likely To Cause Confusion As To The Source, Identity Or Sponsorship Of the StealthStar Product ...........................9

                (1) Zodiac's trade dress is strong...............................9

---

**MEMORANDUM OF P&A ISO**
***EX PARTE* MOTION FOR TRO AND OSC**           13CV0343-GPS-WMC

|  |  | (2) | The appearance of AquaStar's StealthStar pool cleaner is nearly identical to the appearance of Zodiac's Polaris 280 pool cleaner .................................................................. 10 |
|---|---|---|---|
|  |  | (3) | AquaStar intended to copy Zodiac's trade dress .................................................................... 10 |
|  |  | (4) | The remaining factors also weigh decidedly in Zodiac's favor ................................................. 11 |

B. Zodiac Will Suffer Irreparable Injury if a TRO and Preliminary Injunction are Not Issued .................................................................... 11

    1. AquaStar's Inferior Products Harm Zodiac and the Public ...... 12

    2. Loss of Goodwill and Market Share .......................................... 12

    3. Public Interest Will Be Served .................................................. 13

C. The Balance of Hardships Tips Sharply in Zodiac's Favor ................ 13

IV. CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

## CASES

*AMF, Inc. v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979) .................................................................... 10, 12

*Apple Computer, Inc. v. Formula Int'l, Inc.,*
  725 F.2d 521 (9th Cir. 1984) ............................................................................ 10

*Brookfield Communs v. W. Coast Entm't Corp.,*
  174 F.3d at 1059 (9th Cir. Cal. 1999) ....................................................... 11, 12

*Canon Computer Sys. v. Nu-Kote Int'l,*
  134 F.3d 1085 (Fed. Cir. 1998) ........................................................................ 14

*Clamp Mfg. Co. v. Enco Mfg. Co.,*
  870 F.2d 512 (9th Cir. 1989) .............................................................................. 8

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
  251 F.3d 1252 (9th Cir. 2001) ........................................................................ 5, 6

*Disc Golf Ass'n v. Champion Discs,*
  158 F.3d 1002 (9th Cir. 1998) ............................................................................ 6

*Dogloo, Inc. v. Doskocil Mfg. Co.,*
  893 F. Supp. 911 (C.D. Cal. 1995) ........................................................ 7, 8, 13

*Dymo Industries, Inc. v. Tapeprinter, Inc.,*
  326 F.2d 141 (9th Cir. 1964) .............................................................................. 5

*Eclipse Assoc., Ltd. v. Data General Corp.,*
  894 F.2d 1114 (9th Cir. 1990) .......................................................................... 10

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*
  826 F.2d 837 (9th Cir. 1987) ........................................................................ 9, 10

*GoTo.com, Inc. v. Walt Disney Co.,*
  202 F.3d 1199 (9th Cir. 2000) ............................................................................ 5

*Grey v. Campbell Soup Co.,*
  650 F. Supp. at 1173 (C.D. Cal. 1986) .............................................................. 9

*In re Honeywell, Inc.,*
  8 U.S.P.Q. 2d (BNA) 1600 (T.T.A.B. 1988) .................................................... 7

*International Jensen, Inc. v. Metrosound U.S.A., Inc.,*
  4 F.3d 819 (9th Cir. 1993) ...................................................................... 5, 6, 14

*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.,*
  199 F.3d 1009 (9th Cir. 1999) ............................................................................ 6

*New West Corp. v. NYM Co. of California, Inc.*
 595 F.2d 1194 (9th Cir. Cal. 1979) .................................................................................. 12

*Official Airline Guides, Inc., v. Goss*,
 6 F.3d 1385 (9th Cir. 1993) ................................................................................................ 10

*Park N Fly, Inc. v. Dollar Park & Fly, Inc.*,
 469 U.S. 189 (1984) ........................................................................................................... 14

*Paul Frank Indus. v. Sunich*,
 502 F. Supp. 2d 1094 (C.D. Cal. 2007) ............................................................................. 10

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
 514 U.S. 159 (1995) .............................................................................................................. 6

*Rachel v. Banana Republic, Inc.*,
 831 F.2d 1503 (9th Cir. 1987) ............................................................................................. 5

*Reebok Int'l, Ltd. v. J. Baker, Inc.*,
 32 F.3d 1552 (Fed. Cir. 1994) ............................................................................................ 13

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
 944 F.2d 597 (9th Cir. 1991) ........................................................................................ 13, 14

*STX, Inc. v. Trik Stik, Inc.*,
 708 F. Supp. 1551 (N.D. Cal. 1988) .................................................................................. 6

*Telebrands Corp. v. E. Mishan & Sons*,
 46 U.S.P.Q. 2d (BNA) 1493 (S.D.N.Y. 1997) ................................................................. 10

*Tone Bros. v. Sysco Corp.*,
 28 F.3d 1192 (Fed. Cir. 1994) .............................................................................................. 8

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
 768 F.2d 1001 (9th Cir. 1985) ............................................................................................. 9

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
 505 U.S. 763, 112 S. Ct. 2753 (1992) ......................................................................... 5, 10

*Vaughan Mfg. Co. v. Brikam Int'l., Inc.*,
 814 F.2d 346 (7th Cir. 1987) ............................................................................................... 8

*Vision Sports, Inc. v. Melville Corp.*,
 888 F.2d 609 (9th Cir. 1989) ........................................................................................ 13, 14

*Vuitton v. J. Young Enters., Inc.*,
 644 F.2d 769 (9th Cir. 1981) ............................................................................................... 6

*Wal-Mart Stores, Inc. v. Samara Bros. Inc.*,
 120 S. Ct. 1339 (2000) ......................................................................................................... 8

*White Swan, Ltd. v. Clyde Robin Seed Co., Inc.*,
 729 F. Supp. 1257 (N.D. Cal. 1989) .................................................................................. 9

McDermott Will & Emery LLP
Attorneys At Law
Irvine

**MEMORANDUM OF P&A ISO**
***EX PARTE* MOTION FOR TRO AND OSC**     - iv -     (No. )

*Winter v. Natural Res. Def. Council, Inc.*,
   129 S. Ct. 365 (2008) .................................................................................................. 3

**STATUTES**

15 U.S.C. §1125(a) ............................................................................................................. 5

Fed. R. Civ. P. 65 ................................................................................................................ 5

McDermott Will & Emery LLP
Attorneys At Law
Irvine

Plaintiff Zodiac Pool Systems, Inc. ("Zodiac") respectfully submits this Memorandum Of Points And Authorities In Support of its *Ex Parte* Motion For Temporary Restraining Order And Order to Show Cause Why A Preliminary Injunction Should Not Issue, and represents as follows.

**I.   INTRODUCTION**

A complaint for trade dress infringement and unfair competition was filed at the same time as the Motion for Temporary Restraining Order in this case. Zodiac brings this Motion for Temporary Restraining Order in order to stop AquaStar from using Zodiac's trade dress to mislead and lure customers away from Zodiac's pool cleaning products.

Zodiac is based in Vista, California, and for over 30 years has been engaged in the business of designing, innovating, and manufacturing automatic swimming pool cleaners and related pool accessories. Among the pool cleaners that Zodiac has designed, manufactured, marketed, and sold is the Polaris 280 automatic swimming pool cleaner. The Polaris 280 embodies a particular product configuration and trade dress that is unique in appearance and readily recognized among customers and members of the trade. Zodiac's trade dress has become and is now Zodiac's trademark as evidenced by U.S. Trademark Registration No. 1,725,031 for a distinctive product configuration, granted October 20, 1992.

Defendant AquaStar Pool Products, Inc. ("AquaStar") is a San Diego company in the business of advertising, marketing and selling pool cleaner products and accessories. AquaStar is operated by Olaf Mjelde. Mr. Mjelde used to be contracted by Zodiac to manufacture Polaris pool cleaners. During that time, Mr. Mjelde had access to Zodiac's specifications, designs and suppliers. Specifically, Mr. Mjelde managed production, procurement of materials, and had custody and control of Zodiac's manufacturing molds. Recently, Zodiac learned that AquaStar has commenced marketing and advertising a pool cleaner under the name StealthStar. The StealthStar pool cleaner uses Zodiac's unique and distinctive

product configuration and trade dress.

Zodiac is entitled to a temporary restraining order prohibiting AquaStar from marketing, advertising and selling the StealthStar pool cleaner and using Zodiac's unique and distinctive product configuration. AquaStar is attempting to use Zodiac's unique and distinctive product configuration to sell pool cleaner products to Zodiac's customers. This action infringes on Zodiac's trademark and constitutes unfair competition. Zodiac can establish all four requirements set forth in *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365 (2008), and the Court should therefore issue an order restraining AquaStar from infringing Zodiac's trademark and unfairly competing with Zodiac.

## II. FACTUAL BACKGROUND

### A. Zodiac's Business and Trademark

Zodiac is based in Vista, California and is engaged in the business of designing, innovating, and manufacturing automatic swimming pool cleaners and related pool accessories. Declaration of Troy Franzen In Support Of *Ex Parte* Motion For Temporary Restraining Order and Order to Show Cause ("Franzen Decl.") ¶ 3. Among the pool cleaners that Zodiac has designed, manufactured, marketed, and sold is the Polaris 280 automatic swimming pool cleaner. Franzen Decl. at ¶ 6, Ex. E.

For over 30 years, Zodiac has marketed, distributed, advertised, and sold Polaris pool cleaners using a particular product configuration and trade dress that is unique in appearance and readily recognized among customers and members of the trade. Franzen Decl. at ¶ 6. Zodiac's unique and distinctive product configuration and trade dress is embodied in the Polaris 280 pool cleaner. Franzen Decl. at ¶ 6. Specifically, Zodiac's unique and distinctive product configuration and trade dress includes, among other features, a three-wheeled pool cleaner configuration that is arranged such that two predominantly large wheels are disposed on a single plane, and a third predominantly large wheel is disposed

1  opposite of the two large wheels.  Franzen Decl. at ¶ 6.

2  Zodiac's trade dress has become and is now Zodiac's trademark.
3  Zodiac is the registrant and exclusive owner of U.S. Trademark Registration No.
4  1,725,031 for a distinctive product configuration, granted October 20, 1992, listed
5  on the Principal Register of the U.S. Patent and Trademark Office, and used in
6  connection with goods described as "automatic swimming pool cleaners designed
7  to travel on and clean submerged surfaces of pool by a combination of jet action
8  and vacuuming."  Franzen Decl. at ¶ 5, Ex. A.

9  **B.  AquaStar's Business and the StealthStar Pool Cleaner**

10  AquaStar is a San Diego company engaged in the business of
11  advertising, marketing and selling automatic swimming pool cleaners and related
12  pool accessories.  Franzen Decl. at ¶ 10.  AquaStar has recently commenced
13  marketing and advertising, for purposes of distributing and selling, a pool cleaner
14  under the name "StealthStar" using a particular product configuration and trade
15  dress that is strikingly similar to Zodiac's protected trade dress.  Franzen Decl. at ¶
16  11, Ex. B.  AquaStar recently exhibited the StealthStar at a trade show in Atlantic
17  City, New Jersey in January 2013.  Franzen Decl. at ¶ 12.

18  Specifically, the StealthStar has three large wheels, with two large
19  wheels disposed on a single plane, and a third large wheel disposed opposite of the
20  two large wheels, a fourth wheel disposed between the two large wheels, a filter
21  bag disposed vertically, and a blue and white color scheme.  Franzen Decl. at ¶ 14.

22  AquaStar is operated by Olaf Mjelde.  Franzen Decl. at ¶ 13.  Mr.
23  Mjelde was previously hired by Zodiac to manage the manufacturing of Polaris
24  pool cleaners.  Franzen Decl. at ¶ 13.  During that time, Mr. Mjelde had access to
25  Zodiac's specifications, designs and suppliers.  Franzen Decl. at ¶ 13.  Mr. Mjelde
26  duties included managing production of Polaris pool cleaners, procuring materials,
27  and designing and repairing molds used for manufacturing the housings of Polaris
28  pool cleaners.  Franzen Decl. at ¶ 13.

## III. ARGUMENT

Pursuant to Fed. R. Civ. P. 65, Zodiac seeks a temporary restraining order and preliminary injunction. The grant of such relief is within the Court's discretion. *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141 (9th Cir. 1964). To obtain a preliminary injunction, a plaintiff must show "either [i] a combination of probable success on the merits and the possibility of irreparable injury or [ii] the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000).

### A. There is A Substantial Likelihood That Zodiac Will Succeed On Each of Its Claims

#### 1. There is A Substantial Likelihood That Zodiac Will Succeed On Its Trade Dress Infringement Claims and Unfair Competition Claims

Trade dress refers to the "total image of a product and 'may include features such as size, shape, color, color combinations, texture, or graphics.'" *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 821-822 (9th Cir. 1993). 15 U.S.C. §1125(a) "entitle[s] the first manufacturer of a product to an unregistered trademark in the 'trade dress' of its product." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir. 1987). Competing manufacturers are required to avoid copying their rivals' distinctive product and packaging designs. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F. 3d 1252, 1261 (9th Cir. 2001).

To prevail on a trade dress infringement claim under Section 1125 of the Lanham Act or common law, the plaintiff must demonstrate: [i] its claimed trade dress is non-functional; [ii] its claimed trade dress serves a source identifying role, either because it is inherently distinctive or has acquired secondary meaning; and [iii] the appearance of Defendant's products or packaging is likely to create consumer confusion. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.

Ct. 2753 (1992); *Disc Golf Ass'n v. Champion Discs*, 158 F.3d 1002, 1005 (9th Cir. 1998).

### a. Zodiac's Product Configuration is not Functional

Zodiac's trade dress is the subject of an incontestable federal registration, which gives rise to a presumption of non-functionality. *Vuitton v. J. Young Enters., Inc.*, 644 F.2d 769, 774-76 (9th Cir. 1981). In addition, Zodiac's trade dress (*i.e.*, three-wheeled cleaners) is non-functional because it is not essential to the use or purpose of pool cleaners and does not affect their cost or quality. *Qualitex Co. v. Jacobson Prods. Co., Inc.,* 514 U.S. 159, 165 (1995). Utility is not to be equated with functionality as trade dress may have some utility and still be legally non-functional. *STX, Inc. v. Trik Stik, Inc.,* 708 F. Supp. 1551,1558 (N.D. Cal. 1988). The proper inquiry is whether the whole collection of features taken together is functional or non-distinctive. *Clicks,* 251 F.3d 1259. The Franzen declaration specifies the elements which comprise Zodiac's pool cleaners' trade dress. Franzen Decl. at ¶ 6. Only where **all** features are functional and there is no evidence that anything about a product, including arrangement and combination of parts, is intended to identify source or is ornamental, will trade dress be precluded due to functionality. *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.,* 199 F.3d 1009,1013 (9th Cir. 1999).

Factors in determining functionality are: [i] whether a particular design yields a utilitarian advantage; [ii] whether alternative designs are available to avoid hindering competition; and [iii] whether the design achieves economies in manufacture and use. *International Jensen,* 4 F.3d at 823.

#### (1) Zodiac's trade dress does not yield a utilitarian advantage

As discussed in the Franzen declaration, the overall visual appearance of Zodiac's Polaris pool cleaners are not essential to the use or purpose of the pool cleaner, nor does it provide greater performance or permit better operation.

1 Nothing about the overall appearance makes Zodiac's Polaris pool cleaners work
2 better or differently from other pool cleaners. AquaStar's StealthStar need not have
3 a three-wheeled configuration with a strikingly identical appearance as the Polaris
4 280 – with two prominent wheels disposed on a single plane, a third prominent
5 wheel disposed opposite the two wheels, a fourth wheel disposed between the two
6 large wheels, a filter bag disposed vertically, and a blue and white color scheme –
7 in order to make the pool cleaner perform or operate better. The ornamental overall
8 appearance of Zodiac's Polaris pool cleaners is not functional and need not have
9 been copied to sell pool cleaners. Franzen Decl. at ¶ 7.

(2)     There are many alternative designs for pool cleaners

The many other pool cleaner designs that have been competing and continue to compete with Zodiac's Polaris pool cleaners demonstrate that Zodiac's particular product configuration is neither functional nor needed by competitors to effectively compete. *In re Honeywell, Inc.,* 8 U.S.P.Q.2d (BNA) 1600 (T.T.A.B. 1988); Franzen Decl. at ¶ 22, Ex C. Perhaps the most conclusive evidence on this point is that AquaStar itself has competed with Zodiac and other competitors with *other* pool cleaners which ***do not*** look like the Polaris 280. Franzen Decl. at ¶ 23, Ex D.

(3)     Zodiac's Polaris Pool Cleaners are not less expensive to manufacture or use

The features creating the overall appearance of Zodiac's Polaris pool cleaners do not make it easier or cheaper to manufacture or use. Franzen Decl. at ¶ 7. The product configuration is not the result of a comparatively simple, cheap, or superior method of manufacture, but in fact cost more to manufacture. Franzen Decl. at ¶ 6; *See Dogloo, Inc. v. Doskocil Mfg. Co.,* 893 F. Supp. 911, 918 (C.D. Cal. 1995).

### b. Zodiac's trade dress is distinctive

Product designs are protectable upon showing of acquired distinctiveness or secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros. Inc.,* 120 S. Ct. 1339 (2000). Secondary meaning means the purchasing public associates a configuration with a particular source. *Clamp Mfg. Co. v. Enco Mfg. Co.,* 870 F.2d 512, 517 (9th Cir. 1989).

Factors to be considered include the degree and manner of Zodiac's advertising and the length, manner and exclusivity of use. *Clamp Mfg.,* 870 F.2d at 517; *Dogloo,* 839 F. Supp. at 918. Where a product design has been prominently displayed in advertising and promotional efforts, secondary meaning can be inferred. *Clamp Mfg.,* 870 F.2d at 517. Evidence of use and advertising over a substantial time period is enough to establish second meaning. *Clamp Mfg.,* 870 F.2d at 517; *Dogloo,* 893 F. Supp. at 918. Consumer testimony or surveys are not needed to provide secondary meaning for a preliminary injunction motion. *Vaughan Mfg. Co. v. Brikam Int'l., Inc.,* 814 F.2d 346, 349, (7th Cir. 1987). Secondary meaning can be sustained on circumstantial evidence. *Tone Bros. v. Sysco Corp.,* 28 F.3d 1192, 1205 (Fed. Cir. 1994).

#### (1) Zodiac's Polaris pool cleaners are inherently distinctive

For the approximately thirty years that Zodiac has been in business, and certainly since Zodiac adopted its distinctive design and product configuration, no other manufacturer has sold pool cleaners in the U.S. that look like the Polaris 280. Franzen Decl. at ¶ 21.

#### (2) Zodiac's Polaris pool cleaners and trade dress have acquired Distinctiveness (secondary meaning)

##### (a) Long term exclusive use

Exclusive use evidence is a factor in assessing secondary meaning. Zodiac *exclusively* used its product trade dress in the United States for 21 years.

1  Franzen Decl. at ¶ 21.  Secondary meaning can be established in as little as two
2  years or less.  *See, e.g., White Swan, Ltd. v. Clyde Robin Seed Co., Inc.,* 729 F.
3  Supp. 1257, 1262 (N.D. Cal. 1989).  Here, Zodiac has manufactured the only pool
4  cleaners available in the U.S. with this dramatically different trade dress, for more
5  than two decades.  Franzen Decl. at ¶ 21.

         (b)  Extensive advertising demonstrates secondary meaning

8    Advertising and promotional activities featuring the trade dress
9  provide persuasive evidence of secondary meaning.  *White Swan,* 729 F. Supp. at
10 1261.  Zodiac has advertised and promoted its Polaris pool cleaners in a variety of
11 ways, intending to maximize their exposure at wholesale and retail levels.  Franzen
12 Decl. at ¶ 24.  Zodiac has spent millions of dollars advertising and promoting its
13 Polaris pool cleaners.  Franzen Decl. at ¶ 24.  Zodiac's use of its trade dress in
14 stores and other situations, have been seen by, and made a visual impression, on at
15 least hundreds of thousands (and potentially millions) of actual and potential
16 consumers and users.  Franzen Decl. at ¶ 25.

         (c)  AquaStar's copying implies secondary meaning

19   Proof of copying may establish secondary meaning.  There is no
20 reason to copy a non-functional feature except to capitalize on an existing
21 secondary meaning.  *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d
22 1001, 1016 (9th Cir. 1985).  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d
23 837, 844 (9th Cir. 1987).  Close imitation often is sufficient to establish secondary
24 meaning.  *Grey v. Campbell Soup Co.,* 650 F. Supp. at 1173 (C.D. Cal. 1986).  A
25 visual comparison between Zodiac's Polaris 280 pool cleaner and AquaStar's
26 StealthStar pool cleaner confirms such close imitation.

**MEMORANDUM OF P&A ISO**
*EX PARTE* **MOTION FOR TRO AND OSC**  - 8 -  (No. )

    c. <u>AquaStar's Use Of Zodiac's Trade Dress Is Likely To Cause Confusion As To The Source, Identity Or Sponsorship Of the StealthStar Product</u>

Likelihood of confusion in the trade dress context is evaluated by reference to the same factors used in the ordinary trademark context. *Two Pesos,* U.S. 5050 at 773; *Fuddruckers, Inc.*, 826 F.2d at 845. In determining likelihood of confusion, the Court applies the eight-factor analysis set forth in *AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979)*, which consist of: (1) strength of the mark; (2) similarity of the marks; (3) proximity of the goods/services sold; (4) similarity in marketing channels used; (5) type of goods/services and degree of care likely to be exercised by the purchaser; (6) evidence of actual confusion; (7) intent of the second user; and (8) likelihood of expansion of product lines and services. *Paul Frank Indus. v. Sunich*, 502 F. Supp. 2d 1094, 1099-1100 (C.D. Cal. 2007) (Carney, J.) (analyzing the *Sleekcraft* factors to find a likelihood of confusion and granting the request for a preliminary injunction); *see also Eclipse Assoc., Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990) (factors are designed to be helpful guidelines).

Because this is a motion for TRO/preliminary injunction, Zodiac is not required to prove all of the *Sleekcraft* factors at this stage. *See Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 526 (9th Cir. 1984) ("[A]t this stage of the proceeding, the trial court is not required to consider all of those factors.").

    (1) <u>Zodiac's trade dress is strong</u>

To determine strength, the trade dress must be viewed as a whole, as it is viewed in the marketplace. *Official Airline Guides, Inc., v. Goss,* 6 F.3d 1385, 1392 (9th Cir. 1993). Trade dress which is unique and distinctive is considered strong and therefore protectable. *Telebrands Corp. v. E. Mishan & Sons,* 46 U.S.P.Q.2d (BNA) 1493 (S.D.N.Y. 1997). Here, however, even though Zodiac's trade dress is unique and distinctive (Franzen Decl. at ¶¶ 5, 6), the burden on

1  Zodiac to prove this element is of diminished importance because AquaStar has
2  made its StealthStar pool cleaner essentially identical to and competitive with
3  Zodiac's Polaris 280 pool cleaner. *Brookfield Communs v. W. Coast Entm't Corp.,*
4  174 F.3d at 1059 (9th Cir. Cal. 1999). Zodiac's trade dress – for over 20 years –
5  has been unique and distinctive, has been sold and/or viewed by millions of
6  customers, and is therefore strong. Franzen Decl. at ¶ 25.

      (2) <u>The appearance of AquaStar's StealthStar pool cleaner is nearly identical to the appearance of Zodiac's Polaris 280 pool cleaner</u>

10  As discussed in the Franzen declaration, the overall similarity of
11  AquaStar's StealthStar pool cleaner to Zodiac's Polaris 280, demonstrates that
12  AquaStar intended its StealthStar pool cleaner to appear as similar as possible to the
13  Polaris 280 pool cleaner. Franzen Decl. at ¶ 14, Ex. B & E. Consumers, likely to
14  have imperfect memories of Zodiac's Polaris 280, will therefore recall and
15  reinforce the similarities, and discount the differences, upon seeing AquaStar's
16  StealthStar pool cleaner.

      (3) <u>AquaStar intended to copy Zodiac's trade dress</u>

18  Mr. Mjelde, the owner and operator of AquaStar, was a former
19  contractor and employee of Zodiac. Mr. Mjelde was responsible for manufacturing
20  Polaris pool cleaners and had unfettered access to Zodiac's specifications, designs,
21  drawings, and manufacturing tooling of Polaris pool cleaners. Specifically, Mr.
22  Mjelde was responsible for designing and repairing molds used for manufacturing
23  components of the Polaris 280 pool cleaner. Franzen Decl. at ¶ 13. Accordingly,
24  Mr. Mjelde, and hence AquaStar, was fully aware of Zodiac's trade dress and the
25  reputation and goodwill that accompanied Zodiac's trade dress. AquaStar's intent
26  to copy Zodiac's trade dress and trade on Zodiac's goodwill can be inferred from
27  the fact that it chose to manufacture, advertise, market, and sell a pool cleaner that
28  is nearly identical to the Polaris 280 pool cleaner.

                (4)      The remaining factors also weigh decidedly in Zodiac's favor

The remaining factors to be considered by the Court do not merit an extended discussion; and in light of the discussion on the same topics above, a brief review of those factors indicates that they likewise strongly support Zodiac. Evidence of actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act. *See also New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194 at 1201 (9th Cir. Cal. 1979).

Likewise, the factor of likelihood of expansion in product lines is relatively unimportant where, as here, Zodiac and AquaStar both sell pool cleaning products and accessories to the same consumers via the same marketing channels. *See Brookfield*, 174 F.3d at 1060; *AMF Inc.,* 599 F.2d at 354 (when goods are closely related, any expansion is likely to result in direct competition). As for the likely degree of customer care in purchases from the parties, pool cleaners are relatively low cost products ($100 to $500), for which consumers use relatively little care and spend relatively little time in evaluation and selection. Franzen Decl. at ¶ 19.

Finally, there can be no dispute that the parties are direct competitors in the consumer pool cleaning product industry. "The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent." *Brookfield*, 174 F.3d at 1060.

In light of all of these factors, consumer confusion is inevitable.

**B.**     **Zodiac Will Suffer Irreparable Injury if a TRO and Preliminary Injunction are Not Issued**

The Ninth Circuit does not require a particular finding of irreparable injury to support the grant of temporary retraining order or preliminary injunctive relief in trademark infringement and unfair competition cases. Once the plaintiff establishes likelihood of confusion, it is ordinarily presumed that the plaintiff will

1  suffer irreparable harm if injunctive relief is not granted.  *Vision Sports, Inc. v.*
2  *Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir. 1989).  Nonetheless, the nature of
3  AquaStar's infringement of Zodiac's trade dress undoubtedly will cause irreparable
4  injury to Zodiac.  Specifically, Zodiac faces irreparable harm to its reputation and
5  goodwill as well as the whittling away of the quality, value, and distinctiveness of
6  Zodiac's trade dress if AquaStar's conduct is not immediately enjoined.  Such
7  injury is intangible and very difficult to value in monetary terms.  *See Rent-A-*
8  *Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th
9  Cir. 1991).

10  Moreover, "it is logical to infer that [plaintiff] would suffer
11  incalculable harm to its goodwill and reputation if it lost exclusive control" over its
12  product trade dress.  *Dogloo,* 893 F. Supp. at 921.  This is especially true since
13  AquaStar's pool cleaners are inferior.  If the public is confused, this inferior quality
14  makes the threat to Zodiac's reputation particularly acute.

15      1.    <u>AquaStar's Inferior Products Harm Zodiac and the Public</u>
16  Harm to reputation resulting from confusion between an inferior
17  product and superior product is often not fully compensable by money because the
18  damages are speculative and difficult to measure. *Reebok Int'l, Ltd. v. J. Baker,*
19  *Inc.,* 32 F.3d 1552 (Fed. Cir. 1994).  As detailed in the Franzen declaration,
20  AquaStar's StealthStar pool cleaners are inferior to Zodiac's Polaris 280 pool
21  cleaners in significant ways (and the inferior construction is hidden or may not
22  otherwise be obvious at the time of purchase).  Franzen Decl. at ¶ 20.  This inferior
23  quality could result in poor performance and/or lack of durability.  Zodiac will
24  likely suffer irreparable harm if consumers attribute the inferior product to Zodiac,
25  creating a potential loss of sales and customers in an amount which will never be
26  known with certainty.

27      2.    <u>Loss of Goodwill and Market Share</u>
28  Injury to business goodwill is often difficult to calculate, thus

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
IRVINE

**MEMORANDUM OF P&A ISO**
*EX PARTE* **MOTION FOR TRO AND OSC**  - 12 -  (No. )

supporting a finding of irreparable injury. *Rent-A-Center, Inc.,* 944 F.2d at 603. Loss of market share will also sustain a finding of irreparable harm. *Canon Computer Sys. v. Nu-Kote Int'l,* 134 F.3d 1085, 1090 (Fed. Cir. 1998). Here, Zodiac's goodwill, in the form of continuing sales to customers, will be irretrievably lost due to AquaStar's infringement of Zodiac's trade dress, especially in view of the Orlando Pool & Spa Show this Friday, February 15, 2013, where many of Zodiac's customers make purchasing decisions regarding high-volume orders. Moreover, AquaStar's cheaper infringing products are likely to cause Zodiac to lose a significant portion of its U.S. market share, from which it may never recover. Franzen Decl. at ¶¶ 20.

### 3. Public Interest Will Be Served

In addition to protecting Zodiac from further irreparable injury, the public interest overwhelmingly favors the grant of injunctive relief at this time. The paramount public policy underlying the Lanham Act is protection of the public from confusion. *See, e.g. Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1984).

### C. The Balance of Hardships Tips Sharply in Zodiac's Favor

In trade dress infringement actions, if the moving party is able to show a likelihood of success on the merits, irreparable harm is presumed. *See Vision Sports Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir. 1989). Since a preliminary injunction is an equitable remedy, "the trial court must balance the equities in the exercise of its discretion." *International Jensen*, 4 F.3d at 822. Here the balance tips decidedly in favor of Zodiac, as it has invested many years of efforts and financial resources in creating and promoting and selling products embodying Zodiac's distinctive trade dress. Each day that AquaStar continues its activities, more prospective customers will be misled, confused, and deceived. Each day that AquaStar continues to advertise, market and sell the StealthStar pool cleaner, the reputation and goodwill associated with Zodiac's trade dress continues

to be tarnished. There is an immediate need to prevent AquaStar from continuing to sell its infringing products and showcasing such products to thousands of customers this Friday at the Orlando Pool & Spa Show.

AquaStar, on the other hand, just recently started marketing and advertising the StealthStar pool cleaner, thereby minimizing any potential harm that the requested relief might cause to AquaStar. Probably more importantly, AquaStar can continue manufacturing or purchasing and selling their other non-infringing pool cleaners until this case can be decided on its merits.

## IV.   CONCLUSION

Zodiac respectfully requests that a temporary restraining order be issued, and that the Court issue an Order to Show Cause why a preliminary injunction should not be granted.

Dated: February 13, 2013

McDERMOTT WILL & EMERY LLP
DANIEL R. FOSTER
ERIC R. GARCIA

By: /s/ Daniel R. Foster
    DANIEL R. FOSTER
    Attorneys for Plaintiff, Zodiac Pool Systems, Inc.

DM_US 41190916-1.084586.0210

**MEMORANDUM OF P&A ISO**
*EX PARTE* **MOTION FOR TRO AND OSC**   - 14 -   (No. )