# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZODIAC POOL SYSTEMS, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>AQUASTAR POOL PRODUCTS, INC., a California corporation,<br><br>    Defendant. | CASE NO. 13cv343-GPC(WMC)<br><br>**ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>[Dkt. No. 5.] |

On February 12, 2013, Plaintiff Zodiac Pool Systems, Inc. filed a trademark infringement complaint against Defendant Aquastar Pool Products, Inc. (Dkt. No. 1.) On February 13, 2013, Plaintiff filed an *ex parte* motion for temporary restraining order. (Dkt. No. 5.) On February 14, 2013, Defendant filed an opposition. (Dkt. Nos. 9, 10.) A telephonic hearing was held on February 15, 2013.[1] (Dkt. No. 14.) Daniel Foster, Esq. and Eric Garcia, Esq. appeared on behalf of Plaintiffs and Robert Lauson, Esq. appeared on behalf of Defendant. At the hearing, the Court granted Defendant additional time to file a supplemental opposition to the TRO. On February 20, 2013, Defendant filed a supplemental opposition to Plaintiffs' *ex parte* motion for temporary restraining order. (Dkt. Nos.

---

[1] The Court set a shortened hearing date as Plaintiff alleged that Defendant intended to show the alleged infringing product at the Orlando trade show that began on Friday, February 15, 2013. In opposition, Defendant stated that it would not be showing StealthStar, the alleged infringing product, at the trade show. (Dkt. No. 10, Mjelde Decl. ¶ 3.) That issue is now moot.

1  15, 16.) A telephonic hearing was held on February 21, 2013. (Dkt. No. 17.) Daniel Foster, Esq. and
2  Eric Garcia, Esq. appeared on behalf of Plaintiffs and Robert Lauson, Esq. appeared on behalf of
3  Defendant. On February 21, 2013, the parties filed supplemental letter briefs. (Dkt. Nos 18, 19.)
4  After a review of the briefs, applicable law, and hearing oral argument, the Court **DENIES** Plaintiff's
5  *ex parte* motion for temporary restraining order.

## Background

7  According to the Complaint, Plaintiff is in the business of designing, innovating and
8  manufacturing automatic swimming pool cleaners and related pool accessories. (Dkt. No. 1, Compl.
9  ¶ 8.) For over 30 years, Plaintiff has marketed, distributed, advertised and sold Polaris pool cleaners
10 using a particular product configuration and trade dress that is unique in appearance and readily
11 recognized by customers and members of the trade. (Id. ¶ 10.) Among the pool cleaners Zodiac
12 manufactures is Polaris 280 automatic swimming pool cleaner. (Id. ¶ 9.) Polaris 280 pool cleaner is
13 widely known and recognized by its distinctive appearance. (Id. ¶ 11.) Zodiac's trade dress has
14 become Zodiac's trademark. (Id. ¶ 12.) Plaintiff is the owner and exclusive owner of U.S. Trademark
15 Registration No. 1,725,031 for a distinctive product configuration granted on October 20, 1992 with
16 the U.S. Patent and Trademark Office. (Id. ¶ 13.) It is used in connection with goods described as
17 "automatic swimming pool cleaners designed to travel on and clean submerged surfaces of pool by
18 a combination of jet action and vacuuming." (Id., Ex. B.)

19 Defendant AquaStar is engaged in the business of manufacturing automatic swimming pool
20 cleaners and related pool accessories. (Id. ¶ 14.) It has recently started marketing and advertising, for
21 purposes of distributing and selling, a pool cleaner under the name StealthStar pool cleaner. (Id. ¶ 15;
22 Ex. A.) Plaintiff alleges that AquaStar's StealthStar pool cleaner is a reproduction, counterfeit, copy
23 and/or colorable imitation of Zodiac's Polaris 280 pool cleaner. (Id. ¶ 19.) As a result, the product
24 configuration and trade dress used by AquaStar is likely to cause confusion, mistake, and deception
25 relative to Zodiac's pool cleaners, Zodiac's goods and the distinctive product configuration and trade
26 dress used by Zodiac. (Id.)

27 Plaintiff alleges trademark infringement under the Lanham Act, 15 U.S.C. § 1114; trademark
28 counterfeiting under the Lanham Act, 15 U.S.C. § 1114; false designation of original and unfair

competition under the Lanham Act, 15 U.S.C. § 1125(a) and unfair competition under California Business & Professions Code section § 17200 *et seq.*

In opposition, Defendant states that it is in the business of selling replacement parts for automatic swimming pool cleaners. (Dkt. No. 10, Mjelde Decl. ¶ 2.) Defendant has been promoting StealthStar replacement parts for several months and put its catalog online in October 2012 with a webpage "coming soon" for StealthStar replacement parts. (Id. ¶ 3.) Defendant advertised and showed a prototype Stealth Star cleaner at the New Orleans Int'l Pool & Spa in November 2012 and than again in Atlantic City, in January 2013. (Id.) The final design of many replacement parts and any complete unit is not fully determined. (Id.) To date, Defendant has taken no order, made no molds, or produced any of the internal parts. (Id.)

Plaintiff seeks a temporary restraining order enjoining Defendant from infringing on Zodiac's trade dress and unfairly competing with it by marketing, advertising and selling the StealthStar pool cleaner. According to its proposed order, Plaintiff seeks to enjoin Defendant from "accepting or transmitting inquiries or orders for purchase from an entity in the U.S., manufacturing in the U.S., importing into or exporting from the U.S., buying, offering for sale, selling, marketing, advertising, or otherwise distributing in or to the United States, any product, including the StealthStar pool cleaner, which: a) infringes or is substantially similar in overall appearance to the Polaris 280 pool cleaner; b) is identical or confusingly similar to Zodiac's trade dress; c) unfairly competes with Zodiac's pool cleaners or trade dress . . . . " It also seeks to enjoin Defendant from "disposing of, altering, destroying, transferring possession, custody or control, to anyone other than AquaStar's or Zodiac's counsel or to this Court, any document which describes, communicates about or refers to the design, manufacture, order, purchase, import, duties owed or paid for, distribution, advertisement, marketing or sale of any product which is confusingly similar to the overall appearance of the Polaris 280 pool cleaners or Zodiac's trade dress."

Defendant argues that the TRO is now moot since it has not taken any orders and produced any parts and Plaintiff has delayed in seeking relief. Defendant also seeks 60 days of discovery before any relief is granted concerning another recent case in this district which made the same trade dress infringement allegations and was privately settled. See Zodiac Pool Systems v. Custom Molded

1  Prods., 11cv295-MMA(NLS) (S.D. Cal. 2011) Defendant also seeks discovery as to the functionality
2  of the asserted trade dress and documents revealing Plaintiff's true motives in bringing the lawsuit.

### Discussion

The purpose of a TRO is to preserve the *status quo* before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," Winter, 555 U.S. at 22, and the moving party bears the burden of meeting all four Winter prongs. See Cottrell, 632 F.3d at 1135; DISH Network Corp. v. FCC, 653 F.3d 771, 776–77 (9th Cir. 2011).

**A.   Likelihood of Success on the Merits**

Plaintiff argues that there is a substantial likelihood that it will succeed on its trade dress infringement and unfair competition claims. In a supplemental letter brief, Plaintiff also contends the features of the trade dress are "arbitrary, incidental, or ornamental" and is protected under a trade dress separate from the utility patent. See TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 34 (2001). In opposition, Defendant argues that the product's three utility patents are inconsistent with any valid trade dress and cites to TrafFix Devices, Inc., 532 U.S. at 23.

1    "A 'trade dress' refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture or graphics." Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 821-22 (9th Cir. 1993). A plaintiff claiming a trade dress infringement claim under section 1125 must show that the (1) trade dress is non-functional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." Art Attacks Inc, LLC v. MGA Entm't, Inc., 581 F.3d 1138, 1145 (9th Cir. 2009).

Trade dress protection extends only to product features that are not functional. Disc Golf Ass'n v. Champion Discs, Inc., 158 F.3d 1002, 1006 (9th Cir. 1998). Trade dress is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 33 (2001). "In determining functionality, a product's trade dress must be analyzed as a whole." First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1381 (9th Cir.1987). The Ninth Circuit weighs four factors in determining whether a product feature is functional: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." Disc Golf, 158 F.3d at 1006. No one factor is dispositive; all should be weighed collectively. Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 823 (9th Cir. 1993). The plaintiff bears the burden of proving non-functionality—the accused need not prove that the trade dress at issue is functional. Rachel v. Banana Republic, 831 F.2d 1503, 1506 (9th Cir. 1987).

Expired utility patents are strong evidence that the features of the product is functional. TrafFix Devices, Inc., 532 U.S. at 29-30; see also Seirus Innovative Accessories, Inc. v. Gordini U.S.C., Inc., 849 F. Supp. 2d 963, 983 (S.D. Cal. 2012) (Plaintiff's expired utility patents present strong evidence that the features of these products are functional). Once the expired patent claimed the features in question, Plaintiff bears the heavy burden to demonstrate the non-functionality of the feature. TrafFix, 532 U.S. at 30. The Federal Circuit has held that TrafFix does not "require that a patent claim the exact configuration for which trademark protection is sought in order to find that configuration to be functional." In re Becton, Disckinson & Co., 675 F.3d 1368, 1375 (Fed. Cir. 2012). Instead, "statements in a patent's specification illuminating the purpose served by a design may

constitute equally strong evidence of functionality." Id. (citing TrafFix Devices, Inc., 532 U.S. at 32-33).

As to "arbitrary, incidental or ornamental" aspects of the product,[2] the United State Supreme Court, in dicta, explained the manufacturer "could perhaps prove that those aspects do not serve a purpose within the terms of the utility patent. The inquiry into whether such features, asserted to be trade dress, are functional by reason of their inclusion in the claims of an expired utility patent could be aided by going beyond the claims and examining the patent and its prosecution history to see if the feature in question is shown as a useful part of the invention." Id. at 34. Plaintiff contends that its trade dress also involves the "arbitrary size and proportion of the wheels; the arbitrary and ornamental design of the wheel, with its solid and non-spoked design; and the round design of the housing, including its proportion and arrangement of color." (Dkt. No. 18.) Under TrafFix, Plaintiff needs to present more than just conclusory statement that these features are arbitrary, incidental or ornamental. See TrafFix Devices, Inc., 532 U.S. at 34. The Court is unable to make such a determination at this early stage of the proceedings.

Plaintiff argues that the trade dress (i.e., three-wheeled cleaners) is non-functional because it is not essential to the use or purpose of pool cleaners and does not affect their cost or quality.[3] It also argues that the trade dress of the Polaris 280 is not easier or cheaper to manufacture and its features are aesthetic and do not provide any functional advantage over alternative designs that are available and used by competitors.

In opposition, Defendant presents the Court with several expired patents allegedly owned by Plaintiff, that address features of Plaintiff's automatic swimming pool cleaners. The Henkin '754 expired patent issued in 1974 describes the three wheeled configuration. (Dkt. No. 10, Lauson Decl., Ex. M.) The Greskovics expired '479 patent issued in 1985 also describes the three-wheeled structure.

---

[2] In TrafFix, the Court stated that the dual-spring design is the "essential feature of the trade dress" that the Respondent wanted to protect. 532 U.S. at 26, 30. The trade dress in TrafFix also included "four legs, a base, an upright, and a sign." Id. at 34.

[3] In argument, Plaintiff states, "Zodiac's trade dress (i.e. three-wheeled cleaners) is non-functional . . . ." (Dkt. No. 5-1 at 11.) However, in Franzen's declaration, he describes the trade dress as having four wheels. (Dkt. No. 5-2, Franzen Decl. ¶ 6.) The Court is not clear whether the trade dress is a three or four wheel feature.

(Id., Ex. O.)  The '550 patent discloses and claims the vertical filter bag and collar between the body of the unit and the filter bag.  (Id., Ex. F.)  Defendant argues that the entirety of the registered trade dress, in particular, the three wheeled configuration, is functional.

Based on these expired patents, it appears that the expired patent discloses the features at issue.  Under TrafFix, an expired utility patent is strong evidence of functionality and Plaintiff must bear the heavy burden of showing that the feature is not functional.  See TrafFix Devices, Inc., 532 U.S. at 33.  Plaintiff has not shown that the features are non-functional.  Based on what is before the Court, Plaintiffs have not shown a likelihood of success on the merits.

**B.     Irreparable Harm**

Plaintiff alleges it faces irreparable harm to its reputation, goodwill and marketshare as well as diminishing the quality, value and distinctiveness of its trade dress.  Defendant contends that there is no irreparable harm as the emergency was created by Plaintiff as it knew for many months that Defendant was advertising and promoting its replacement parts and that Defendant had advertised a prototype of StealthStar at a trade show in November 2012 and again in January 2013.  Moreover, Defendant has stated that it has taken no orders and produced no parts. (Dkt. No. 10, Mjelde Decl. ¶ 3.)  It also contends it will be harmed by a TRO as Plaintiff is using this *ex parte* motion for an improper purpose in order to damage its reputation.  If a TRO is issued, Defendant wants it to explicitly state that there is no prohibition to selling individual replacement parts for the Polaris automatic pool cleaners except to the extent any are covered by any valid patents.

A long delay before seeking injunctive relief implies a lack of urgency and irreparable harm.  Miller v. California Pac. Med. Ctr., 991 F.2d 536, 544 (9th Cir. 1993) (citation omitted).  In addition, courts have found that trademark infringement litigation may proceed in the absence of the product having been sold.  PDK Labs, Inc. V. Proactive Labs, Inc., 325 F. Supp. 2d 176, 180 (E.D.N.Y. 2004).  Injunctive relief is appropriate before a defendant actually opens the business as long as the threatened act of defendant is "imminent and impending."  Id.  (citing Essie Cosmetics, Ltd. v. Dae Do Int'l, Ltd., 808 F. Supp. 952, 957 (E.D.N.Y. 1991)).

Plaintiff seeks to enjoin Defendant from infringing on Zodiac's trade dress and unfairly competing with Zodiac by marketing, advertising and selling the StealthStar pool cleaner.  Defendant

asserts that the final design of any complete unit is not fully determined and it has not taken any orders, does not have any molds and has not produced any of the internal parts. (Dkt. No. 10, Mjelde Decl. ¶ 3.) Defendant's website as to the alleged infringing product states "Coming Soon. It does not appear that the alleged infringing product will be imminently sold in the marketplace. Therefore, Plaintiff has not shown irreparable harm.

## C.  Balance of Equities

If an injunction issues, Defendant argues it will be adversely affected as an injunction will harm its reputation and cause embarrassment. In addition, potential customers may mistakenly believe that it cannot sell replacement parts for Polaris 280. If an injunction is not issued, any effect on Plaintiff's business would be minimal as the alleged infringing product is not yet in the marketplace. The balance of equities does not tip in favor of one side.

## D.  Public Interest

Plaintiff claims the policy underlying the Lanham Act is protection of the public from confusion. Defendant does not address this issue. The public interest would not be a factor as the infringing product is not yet on the market.

The Court concludes that Plaintiff has failed to demonstrate it is entitled to relief in the form of a temporary restraining order.

### Conclusion

Based on the above, the Court DENIES Plaintiff's *ex parte* motion for a temporary restraining order.

IT IS SO ORDERED.

DATED: February 22, 2013

HON. GONZALO P. CURIEL
United States District Judge